UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **STEVEN VOGEL** | ) | CASE NO. |
| 178 Forest Hill Drive | ) | |
| Avon Lake, Ohio 44012, | ) | JUDGE |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **NORTHEAST OHIO MEDIA GROUP**, | ) | |
| **LLC d/b/a CLEVELAND.COM** | ) | |
| 1801 Superior Avenue | ) | |
| Cleveland, Ohio 44114, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **PLAIN DEALER PUBLISHING CO.** | ) | **COMPLAINT** |
| Via Statutory Agent CSC-Lawyers | ) | |
| Incorporating Service | ) | |
| 50 W. Broad Street, Suite 1800 | ) | |
| Columbus, Ohio 43215, | ) | **Jury Demand Endorsed Herein** |
| | ) | |
| and | ) | |
| | ) | |
| **CITY OF MEDINA** | ) | |
| 132 N. Elmwood Avenue | ) | |
| Medina, Ohio 44256, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **TAMEKA MORRIS** | ) | |
| 257 Smokerise Drive | ) | |
| Wadsworth, Ohio 44281, | ) | |
| | ) | |
| and | ) | |

| | |
|---|---|
| **SUSAN NAZZARO f.k.a.** | ) |
| **SUSAN HALEY** | ) |
| 651 Sturbridge Dr., Unit #12 | ) |
| Medina, Ohio 44256, | ) |

For his Complaint against defendants, Northeast Ohio Media Group, LLC ("NEOMG"), Plain Dealer Publishing Co. ("Plain Dealer"), City of Medina, Tameka Morris ("Ms. Morris") and Susan Nazzaro f.k.a. Susan Haley ("Ms. Haley"), plaintiff, Steven Vogel ("Mr. Vogel"), alleges as follows:

## JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction pursuant to the following statutes:

a. 28 U.S.C.§1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to  secure civil rights extended by the United States government; and

c. 28 U.S.C. § 1367 which gives the district court supplemental jurisdiction over state law claims.

2.     This Court has personal jurisdiction over the defendants because they each reside and/or have their principle place of business in this judicial district.

3.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c) because (1) the defendants are each subject to personal jurisdiction in this judicial district and, thus, qualify as a resident under 28 U.S.C. §1391(c) (2); and (2) all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

4.     Mr. Vogel is an individual who resides and is domiciled in the County of Lorain, City of Avon Lake, Ohio, and is a former employee of the City of Medina.

5     NEOMG is a registered limited liability company in the State of Ohio that maintains its principal place of business in the County of Cuyahoga, City of Cleveland, State of Ohio.

6.     Plain Dealer is an Ohio corporation licensed to do business in the State of Ohio that has its principal place of business in the County of Cuyahoga, City of Cleveland, State of Ohio.

7.     City of Medina is a municipality that has its principal place of business at 132 N. Elmwood Avenue, City of Medina, County of Medina, State of Ohio.

8.     Ms. Morris is an employee of the City of Medina and resides and is domiciled in the City of Wadsworth, County of Medina, State of Ohio.

9.     Ms. Haley is an employee of the City of Medina and resides and is domiciled in the City of Medina, County of Medina, State of Ohio.

## BACKGROUND AND FACTUAL ALLEGATIONS

10.     Mr. Vogel restates the allegations in paragraphs 1 through 9 as if fully rewritten herein.

11.     Mr. Vogel began employment with the City of Medina on May 1, 2000 as a building inspector and was promoted to interim Chief Building Official by Major Dennis Hanwell in or around February, 2011.  In or around May, 2011, Mr. Vogel became the full-time Chief Building Official for the City of Medina and served in that position until his termination on December 16, 2013.

12.     As Chief Building Official, Mr. Vogel reported directly to Gregory Hannan, who served as the Community Development Director for the City of Medina, overseeing economic development, including the Building and the Planning and Zoning departments. Mr. Hannan reported directly to Mayor Hanwell.

13.     Ms. Morris served in the Building Department as "Permit Technician" and reported directly to Mr. Vogel.  Mr. Vogel had no independent authority to hire, fire or discipline Ms. Morris or any employee.  Any such decision would have to be approved by Mr. Vogel's direct supervisor and/or Mayor Hanwell.

14.     Ms. Haley served in the Building Department as "Counter Clerk" and also reported directly to Mr. Vogel before transferring to the Finance Department.  Mr. Vogel had no independent authority to hire, fire or discipline Ms. Haley or any employee.  Any such decision would have to be approved by Mr. Vogel's direct supervisor and/or Mayor Hanwell.

15.     In addition to Ms. Morris and Ms. Haley, a part-time counter clerk and several inspectors reported directly to Mr. Vogel as the Chief Building Official.

16.     Soon after becoming Chief Building Official, it became evident to Mr. Vogel that the Building Department was short-staffed and he and his staff were constantly required to perform tasks outside of their primary duties in running the Building Department under tremendous time pressures, including the scanning of over 60,000 physical documents into computer files within just a week or two of Mr. Vogel's appointment as Chief Building Official.

17.     In addition, the Building Department did not have approval for the hiring of a full-time building inspector, resulting in the employment of a number of part-time inspectors with high turnover, such that Mr. Vogel often had to handle the loss of an inspector in managing workloads.  For 6 to 8 months, there was no building inspector employed by the City of Medina,

4

requiring that Mr. Vogel personally perform all of the inspections in addition to performing his tasks as Chief Building Official.

18.     On February 13, 2012, Mr. Vogel sent an email to his department staff advising them that coffee cake was available for them in Community Development next to the coffee machine.   Ms. Morris responded by thanking Mr. Vogel, telling him the coffee cake is "delicious" with a smiley face and "I will focus on my diet tomorrow."

19.     On or about March 6, 2012, Ms. Morris voluntarily accompanied Mr. Vogel in Mr. Vogel's car, sitting in the passenger seat, without any other passengers, to a property inspection at 409 North Court St., in Medina, Ohio.  Ms. Morris has provided sworn deposition testimony that she had no reservation or fear in riding alone in Mr. Vogel's car to the referenced inspection and that the trip to and from the inspection was uneventful.

20.     On March 11, 2012, Ms. Morris sent an email to Mr. Vogel, calling him "Baby Steve" and wishing him a good morning.  The email further stated, "I hope you enjoyed the beautiful weather over the weekend" and to "have a great day."

21.     On or about July 26, 2012, Mr. Vogel received sexual harassment training along with other department heads.

22.     On or about March 29, 2013, Ms. Morris voluntarily accompanied Mr. Vogel in Mr. Vogel's car, sitting in the passenger seat, without any other passengers, to another property inspection in Medina, Ohio.  Ms. Morris has provided sworn deposition testimony that she had no reservation or fear in riding alone in Mr. Vogel's car to the referenced inspection and that the trip to and from the inspection was uneventful.

23.     Ms. Morris routinely and openly discussed her personal life, including her relationships, activities and problems outside of work, and diet plans with the other employees in the Building Department, including Mr. Vogel.

24.     Ms. Morris routinely and at all times relevant to the allegations set forth herein referred to other employees and customers of the Building Department as "hun," called Mr. Vogel "Baby Steve" verbally and in email correspondence, and routinely used "smiley faces" in her correspondence, including with Mr. Vogel.

25.     Ms. Morris often complained to Mr. Vogel about certain contractors hitting on her when they came into the Building Department.

26.     In or around April, 2013, Ms. Morris sent an email to Mr. Vogel asking for permission to take vacation in June to go to Hilton Head, South Carolina, concluding with, "have an awesome day" and a smiley face.  When Mr. Vogel jokingly responded that she can go to Hilton Head only if she takes him with her, she responded, "If you can handle my driving and a teenager" with another smiley face.

27.     Ms. Morris also emailed Mr. Vogel, calling him "Baby Steve" and asking to be able to take April 5, 2013 off to take her son for a college visit, with a smiley face.

28.     On May 31, 2013, Ms. Morris sent Mr. Vogel an email, calling him "Baby Steve" and wishing him a "very Happy Birthday!" and a "wonderful weekend."  She concluded the email with "Love ya. Tami."

29.     On August 6, 2013, Ms. Morris sent an email to Mr. Vogel and part-time counter clerk, Elaine Kafchinski, telling them, "You guys are awesome.  Have a great day" with a smiley face.

30.     Ms. Haley and Ms. Morris are good friends and frequently speak on the telephone with each other outside of work, including even before Ms. Haley was transferred to the City of Medina's Finance Department in 2012.

31.     Neither Ms. Morris nor Ms. Haley ever told Mr. Vogel to stop making any particular comments or engaging in any particular behavior and made no complaints to Mr. Vogel whatsoever regarding how he spoke to them or treated them prior to November, 2013.

32.     At no time during the periods relevant to the claims asserted herein did either Ms. Morris or Ms. Haley send out job resumes seeking other employment.

33.     The City of Medina has no Human Resources Director and did not have one at any time relevant to the allegations set forth herein.

34.     On or about Wednesday, November 13, 2013, Ms. Haley complained to Service Director, Nino Piccoli, of alleged instances of inappropriate conduct or "sexual harassment" against Mr. Vogel.

35.     Ms. Haley called Ms. Morris to advise her of her complaints to Mr. Piccoli and Ms. Morris was then absent the following day, Thursday, November 14, 2013.

36.     On November 14, 2013, Gregory Huber ("Mr. Huber"), the Law Director for the City of Medina, called Ms. Haley into his office to discuss her allegations against Mr. Vogel. They met for between 45 minutes and 1 hour.

37.     Over the ensuing weekend, Ms. Haley and Ms. Morris spoke at length over the telephone and, upon information and belief, colluded in how they would present separate complaints against Mr. Vogel for alleged sexual harassment.

38.     On or about November 18, 2013, Ms. Morris and Ms. Haley were called into separate meetings with Mr. Huber to discuss the alleged sexual harassment.  Dawn Conwill was

also present in these meetings.  Mr. Huber advised Ms. Morris and Ms. Haley to prepare their own formal written complaint against Mr. Vogel.

39.  On Wednesday, November 20, 2013, at just a few minutes before 9:00 a.m., Mr. Vogel was summoned by Mr. Huber to Mayor Hanwell's office to meet with Mr. Huber and the Mayor (the "Initial Meeting").

40.  At the Initial Meeting, Mr. Vogel was presented with a letter ("Mayor's Administrative Leave Letter") by Mayor Hanwell advising him without any specifics that sexual harassment allegations had been made against him by Ms. Morris and Ms. Haley (the "Allegations"), placing Mr. Vogel on administrative leave with pay pending an investigation of the Allegations, and requiring that Mr. Vogel immediately turn in his City I-phone, I-pad and all other City-issued equipment and keys.  The Mayor's Administrative Leave Letter further directed Mr. Vogel to report to Mr. Huber's office the following Monday, November 25, 2013 to provide a formal statement with respect to the Allegations.  A true and correct copy of the Mayor's Administrative Leave Letter is attached hereto and is incorporated herein as Exhibit A.

41.  Mr. Vogel proceeded from the Mayor's office to pack-up his personal belongings, turn in the required items to Dawn Conwill, the Mayor's secretary, and leave the City Hall premises without escort and without incident.

42.  Mr. Vogel's only cellphone at the time of his placement on administrative leave was the i-phone issued by the City of Medina that was taken away from him on November 20, 2013.  Therefore, Mr. Vogel was unable to access his text messages and other content, including email, on his I-Phone and I-Pad / computer to support his defense of the Allegations, and was forced to get his own personal cellphone.

8

43.     The City of Medina failed to preserve the data on Mr. Vogel's City-issued I-Phone, which was wiped clean, returned to its original manufacturer settings, and turned back in to the cell phone carrier.

44.     Prior to the Initial Meeting, nobody had ever told Mr. Vogel or even intimated to him that there was any alleged problem with his interactions with Ms. Morris and/or Ms. Haley, and Mr. Vogel was shocked and taken aback by the sudden Allegations.

45.     On or about November 22, 2013, Ms. Morris and Ms. Haley provided separate written complaints to Mr. Huber detailing the Allegations (the "Complaints").  A true and correct copy of the Complaint of Ms. Morris is attached hereto and is incorporated herein as Exhibit B. A true and correct copy of the Complaint of Ms. Haley is attached hereto and is incorporated herein as Exhibit C.

46.     On or about November 26, 2013, Mr. Vogel was notified of the specifics of the Allegations and was able to view the Complaints.

47.     Mr. Huber had no experience or training in conducting investigations of sexual harassment complaints at the time of the Complaints.  Nevertheless, Mr. Huber was tasked with conducting an investigation into the Allegations in his capacity as Law Director.

48.     Mr. Huber purportedly conducted an "investigation" of the Allegations to include interviews with Ms. Morris, Ms. Haley and alleged witnesses.

49.     As part of his "investigation," Mr. Huber did not collect any diaries, statements from other employees / witnesses, text messages or email correspondence.

50.     As part of his investigation, Mr. Huber made no inquiry of and did not investigate any of the email correspondence, text messages and telephone calls by and between Ms. Morris and Ms. Haley.

51.     Mayor Hanwell did not personally investigate any of the facts alleged in the Complaints  or the defenses raised by Mr. Vogel in his verbal and written statements to Mr. Huber, attorney Beck and Mayor Hanwell.

52.     Mr. Huber did not ask Ms. Morris where Mr. Vogel purportedly wanted to take her to dinner and/or for "drinks" and neither Ms. Morris nor Ms. Haley could provide any specificity as to when Mr. Vogel purportedly asked them out to lunch, "drinks" or dinner.  Ms. Morris could only specify "periodically."

53.     Attorney Beck also spoke with Ms. Morris and Ms. Haley and was present during witness interviews conducted by Mr. Huber.

54.     During the City of Medina's alleged "investigation" of the Allegations, Mr. Vogel did not have access to his work email or his work phone, and was not allowed to contact any employees to properly defend against the Allegations.

55.     The so-called "investigation" into Mr. Vogel's alleged "inappropriate behavior" violated essentially every standard, common practice, procedure and guideline readily and easily available to human resource professionals, management consulting firms and legal professionals.[1] The most common and accepted standards, practices, procedures and guidelines are available on-line and published by the United States Equal Employment Opportunity Commission ("EEOC").[2]

---

[1] *See* for example, the U.S. Equal Employment Opportunity Commission (the "EEOC") has published a brochure captioned, "Questions and Answers for Small Employers on Employer  Liability for Harassment by Supervisors." The brochure describes how an employer should  investigate a harassment complaint, page 3, by stating that "an employer should conduct a  prompt, thorough and impartial investigation," "the investigator should interview the employee  who complained of harassment, the alleged  harasser, and others  who could reasonably  be  expected to have relevant information." In addition, the EEOC has published another brochure captioned, "Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment  by Supervisors." This brochure, under the section titled Questions to Ask Parties and Witnesses, details an "Effective Investigative Process" and  provides sample questions to ask the complainant, as well as the alleged harasser and third parties.

[2] It is also pointed out by the EEOC in its Enforcement Guidance that "the anti-discrimination  statutes are not a 'general civility code.' Thus, federal law does not prohibit simple teasing, offhand comments, or isolated incidents that are not 'extremely serious.' Rather, the  conduct  must be 'so objectively offensive as to alter the 'conditions' of the victim's employment."

56.     Mr. Vogel was never asked any of the questions recommended by the EEOC and the "investigation" was anything but "prompt, thorough or impartial."  Nor was the "investigation" confidential, as the only person who was kept in the dark during the investigation was Mr. Vogel.

57.     Because the "investigation" was not "prompt, thorough or impartial," and because Mr. Huber and attorney Beck actually interviewed former employees, the investigation was allowed to become the subject of rumors, gossip and speculation  amongst the City of Medina's past and present employees.

58.     On or about Friday, December 13, 2013, a "pre-disciplinary hearing" (the "Pre-Disciplinary Hearing") was conducted with Mr. Vogel by Mayor Hanwell and Mr. Huber in the Major's office.   Mayor Hanwell advised Mr. Vogel in the Pre-Disciplinary Meeting that he was inclined to terminate Mr. Vogel's employment, but that he was not yet going to make that decision.

59.     Later on Friday, December 13, 2013, Mr. Huber advised Mr. Vogel that Mayor Hanwell had, in fact, decided to terminate Mr. Vogel and that he was to come in on the following Monday, December 16, 2013, to pick up his termination letter and retrieve his remaining personal items.

60.     On Monday, December 16, 2013, Mr. Vogel again met with Mr. Huber and Mayor Hanwell in the Mayor's office (the "Termination Meeting"), wherein Mr. Vogel was presented with a letter titled, "Complaint Involving Building Official Steve Vogel" (the "Termination Letter") and told to sign the same.  A true and correct copy of the Termination Letter is attached hereto and is incorporated herein as Exhibit D.

11

61.     Mayor Hanwell then proceeded to accompany Mr. Vogel to his office and watched Mr. Vogel pack-up his personal belongings.  Mr. Piccoli, assisted Mr. Vogel in carrying his personal belongings to his car.

62.     No police officer ever escorted Mr. Vogel out of the Medina City Hall on November 20, 2013, December 16, 2013, or at any other time.

63.     Mr. Huber,  attorney Beck and Mayor Hanwell determined that Mr. Vogel sexually harassed both Ms. Morris and Ms. Haley based solely on the verbal and written statements of Ms. Morris and Ms. Haley.

64.     In making such determination, Mr. Huber,  attorney Beck and Mayor Hanwell ignored or completely discounted the verbal and written statements of Mr. Vogel, as well as the statements provided in interviews with other employees of the City of Medina.

65.     On or about November 20, 2013, reporter Donna J. Miller ("Ms. Miller") with NEOMG and/or  the Plain Dealer received an anonymous email tip stating that Mr. Vogel  "*was arrested and unarrested then suspended for smacking his secretary in the rear end with a file folder.  The Mayor was instantly there to arrest him then changed his mind and suspended him.*" (Emphasis added).

66.     Ms. Miller contacted Mayor Hanwell by email regarding the anonymous tip and the Mayor responded, "*Donna nothing close to that*" and explained: "*A complaint was filed regarding alleged harassment.  He was placed on Administrative Leave 11/20/13 while complaint is investigated.  Investigation is continuing by our Law Director.  No arrest or criminal charges were alleged  nor was I involved other than to place him on Administrative Leave.  Not sure where this false info is generated from? . . . .*" (Emphasis added).

67.     Ms. Miller was provided with Mr. Vogel's "personnel file" by the City of Medina pursuant to a public records request, which included the Mayor's Administrative Leave Letter.

68.     On or about December 6, 2013, NEOMG and/or the Plain Dealer published false and defamatory statements online and in print form in an article about Mr. Vogel written by Ms. Miller, including that Mr. Vogel was escorted out of the Medina City Hall by police officers.  A true and correct copy of the December 6, 2013 article is attached hereto and is incorporated herein as Exhibit E.

69.     On December 16, 2016, Mayor Hanwell emailed the Termination Letter to numerous reporters and/or media sources, including Ms. Miller.

70.     The Plain Dealer published a second article written by Ms. Miller about Mr. Vogel after receiving the Termination Letter on December 16, 2013.  A true and correct copy of the December 16, 2013 article is attached hereto and is incorporated herein as Exhibit F.

71.     On or about October 26, 2016, the Plain Dealer updated the online version of Ms. Miller's article on its Cleveland.com website, deleting the words "the day he was escorted out of the building" and replacing them with "when he was placed on leave," and removing the entire paragraph referring to police officers.

72.     Only at the bottom of the "updated" article was there any mention that it was an updated version of a prior article, such that a reader would have to read the entire article to comprehend that it was "updated."

73.     The original article written by Ms. Miller was never retracted and only the online version of the article was "updated."

74.     Upon information and belief, there were as many as 20,000 "hits" on the original article on the Plain Dealer's Cleveland.com website before the online article's content was updated.

75.     The City of Medina failed to abide by its own policies and procedures as documented in its employee handbook in the placement of Mr. Vogel on administrative leave, "investigation" of the Allegations and termination of Mr. Vogel.

76.     The City of Medina lacked cause to terminate Mr. Vogel's employment.

77.     Mr. Vogel has suffered irreparable and serious harm to his reputation, both professionally and personally.

78.     Defendants are public entities and/or instrumentalities thereof that have access to broad audiences through publications and websites.

79.     In today's society, and particularly in crowded labor markets like that existing in Northeast Ohio, employers commonly perform background checks and do "cybervetting" of potential job candidates.

80.     When employers engage in such cybervetting, any negative information, particularly that involving alleged sexual and/or criminal misconduct, negatively impacts a potential employer's view of the job candidate.

81.     Due to the element of risk associated with making a significant investment in any new hire, employers attempt to reduce such risk as much as possible before making an offer of employment by doing as much information "vetting" on the candidate as possible, in reliance upon the accuracy of the information they obtain in print or in cyberspace.

82.     It is common that employers pass up potential new hires because of negativity gleaned from searches of publically available sources, including print and digital news sources.

83.     Defendants caused false, damaging information about  Mr. Vogel to be disseminated in print and digitally throughout cyberspace with no regard for the falsity of the information and harm to Mr. Vogel, as a long-term, high ranking  and respected official of the City of Medina.

84.     Plaintiff was forced to seek other employment under a cloud of false sexual harassment allegations recklessly propagated by Defendants with actual malice in the public domain.

85.     After applying for well over thirty (30) jobs without success and being let go from an inspector position with the City of University Heights after only a week due solely to the false and defamatory negative publicity of his termination from the City of Medina by NEOMG and/or the Plain Dealer, on June 1, 2015, Mr. Vogel was finally able to secure new employment with a different employer, but at a wage of at least $15,000 less than what he earned in his position as the Chief Building Official with the City of Medina.

86.     Mr. Vogel's current employer would not hire Mr. Vogel for an entire year due to a fear that Mr. Vogel was under a criminal indictment resulting solely from the false and defamatory reporting of Mr. Vogel's termination from the City of Medina by NEOMG and/or the Plain Dealer.

87.     From December 16, 2013 to the present, Plaintiff has incurred lost wages in excess of $80,000, which losses are continuing.

88.     Prior to November 20, 2013, Plaintiff had never been disciplined in connection with or terminated from any employment and had always received positive work reviews without any documented concern about his relations with other employees.

## COUNT ONE

### (Violation of 42 U.S.C.S. § 1983)

89.    Mr. Vogel restates the allegations in paragraphs 1 through 88 as if fully rewritten herein.

90.    The City of Medina and its agents, employees, and representatives, including Ms. Haley and Ms. Morris, acting under the color of state law, subjected or caused Mr. Vogel to be subjected to the deprivation of his rights, privileges, and immunities secured by the Constitution of the United States and the Constitution of the State of Ohio in causing the discharge of Mr. Vogel from his employment with the City of Medina without due process of law pursuant to false allegations of purported sexual harassment.

91.    Defendants' conduct was deliberate, intentional, reckless or in callous indifference to Mr. Vogel's federally protected rights and was in deprivation of Mr. Vogel's constitutional rights and privileges without adequate due process of law.

92.    As a direct and proximate result of Defendants' intentional actions and/or omissions, Mr. Vogel's employment was wrongfully terminated by the City of Medina.

93.    As a direct and proximate result of Defendants' actions and/or omissions, Mr. Vogel has suffered, and continues to suffer, emotional pain and suffering and loss of enjoyment of life.

94.    As a direct and proximate result of Defendants' actions, Mr. Vogel has suffered lost wages in excess of $80,000 since December 16, 2013, and other employment benefits, which are continuing, as well as embarrassment, humiliation, loss of standing in the community, loss of professional reputation and other hardships.

95. As a direct and proximate result of Defendants' deliberate, reckless and intentional actions taken against Mr. Vogel with actual malice, Mr. Vogel is entitled to punitive damages against Ms. Haley and Ms. Morris.

96. As a direct and proximate result of Defendants' actions, Mr. Vogel has incurred substantial expenses, costs and fees, including, without limitation, attorney's fees.

### COUNT TWO

### (Reverse Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USCS § 2000e *et. seq.*)

97. Mr. Vogel restates the allegations in paragraphs 1 through 96 as if fully rewritten herein.

98. As a direct and proximate result of the City of Medina's, Ms. Haley's and Ms. Morris' discrimination against Mr. Vogel on the basis of gender, Mr. Vogel was wrongfully terminated by the City of Medina.

99. Mr. Vogel's wrongful termination by the City of Medina violates Title VII of the U.S. Code / 42 U.S.C. 2000e-2 in that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

100. As a direct and proximate result of said Defendants' discrimination, Mr. Vogel has suffered, and continues to suffer, emotional pain and suffering and loss of enjoyment of life.

101. As a direct and proximate result of said Defendants' discrimination, Mr. Vogel is owed back pay, with interest thereon, front pay or restoration to his prior position, compensatory damages, expenses and costs, including, without limitation, attorney's fees.

102.    As said Defendants' discriminatory acts against Mr. Vogel were performed with actual malice, Mr. Vogel is additionally entitled to punitive damages from Ms. Morris and Ms. Haley.

## COUNT THREE

### (Reverse Gender Discrimination in Violation of
### Ohio Rev. Code §§ 4112.02(A) and 4112.99)

103.    Mr. Vogel restates the allegations in paragraphs 1 through 102 as if fully rewritten herein.

104.    Mr. Vogel is a member of a non-majority protected class.

105.    Mr. Vogel was discharged or otherwise subject to adverse employment action on the  basis of his gender.

106.    At all times herein,  Mr. Vogel remained qualified for the position of Chief Building Official for the City of Medina.

107.    Mr. Vogel's position has been filled by another employee.

108.    Any alleged basis for the discharge of Mr. Vogel by the City of Medina is purely pre-textual.

109.    As a direct and proximate result of the discriminatory conduct complained of herein, Mr. Vogel is owed back pay, with interest thereon, front pay or restoration to his prior position, compensatory damages, expenses and costs, including, without limitation, attorney's fees.

## COUNT FOUR

**(Creation of Hostile Work Environment Based on Gender in  Violation of Ohio Rev. Code §4112.02(A) and 4112.99)**

110.    Mr. Vogel restates the allegations in paragraphs 1 through 109 as if fully rewritten herein.

111.    Mr. Vogel was subjected to a hostile work environment on the basis of his gender from the written and oral statements and conduct of Ms. Morris and Ms. Haley, falsely alleging that Mr. Vogel sexually harassed them, and the shoddy and inadequate "investigation" by the City of Medina, that  was so severe and pervasive as to permeate the work environment and alter the conditions of M r .  V o g e l ' s  employment.

112.    The fact that many current and former City of Medina employees were aware of the "investigation" while Mr. Vogel was not otherwise formally notified of the purported allegations against him caused other City of Medina employees to avoid contact with Mr. Vogel, and caused numerous past and present employees to speculate as to the investigation, all to the ultimate embarrassment and  humiliation of Mr. Vogel.

113.    As a direct and proximate result of the creation and maintenance of a hostile work environment, Mr. Vogel is owed back pay, with interest thereon, front pay or restoration to his prior position, compensatory damages, expenses and costs, including, without limitation, attorney's fees.

## COUNT FIVE

**(Intentional Infliction of Emotional Distress)**

114.    Mr. Vogel restates  the allegations in paragraphs 1 through 113 as if fully rewritten herein.

115.    The City of Medina, Ms. Morris and Ms. Haley intentionally and willfully acted in an extreme and outrageous manner that was so extreme in degree as to go beyond all bounds of decency, including but not necessarily limited to, the following:

a.    conducting a work place sexual harassment investigation based on reports which had no foundation in fact;

b.    conducting a work place sexual harassment "investigation" on the basis of Mr. Vogel's gender, stature and reputation;

c.    allowing the so-called "investigation" into alleged "inappropriate behavior" to violate essentially every standard and common practice, procedure and guideline readily and easily available to human resource professionals, management consulting firms and legal professionals, including EEOC guidelines;

d.    the providing of false and defamatory statements by Ms. Morris and Ms. Haley to Mr. Huber and, upon information and belief, other agents/employees and members of the public;

e.    failing to advise Mr. Vogel that one or more "complaints" were made against him until after being place on administrative paid leave, denying Mr. Vogel access to his work email, work telephone, and prohibiting Mr. Vogel from interviewing employees; and

f.    failing to conduct a "prompt, thorough or impartial" investigation and allowing the "investigation" to become the subject of rumors, gossip and speculation inside and outside of the City of Medina offices.

116.    Said Defendants' conduct was undertaken with malice and/or a reckless  disregard of Mr. Vogel's rights.

117.    Said Defendants' conduct directly and proximately caused Mr. Vogel to suffer emotional and mental distress.

118.    Mr. Vogel's mental anguish was serious and of a nature that no reasonable man  could be expected to endure.

119.    As a direct and proximate result of said Defendants' actions, Mr. Vogel is entitled to compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of said Defendants' intentional infliction of emotional distress upon Mr. Vogel .

## COUNT SIX

### (Libel)

120.    Plaintiff restates the allegations in paragraphs 1 through 119 as if fully rewritten herein.

121.    On or about December 6, 2013, NEOMG and/or the Plain Dealer published false and defamatory statements in print and online through the Cleveland.com website in an article about Mr. Vogel.

122.    NEOMG's and/or the Plain Dealer's statements were published without privilege to the general public via internet publication and were available to anyone who "searches" for Mr. Vogel's name until at least October 27, 2015.

123.    NEOMG's and/or the Plain Dealer's actions in publishing false statements regarding Mr. Vogel were intentional or done with at least negligence.

124.    NEOMG's and/or the Plain Dealer's statements have caused special harm to Mr. Vogel.

125.    As a direct and proximate result of the defamation by libel of Mr. Vogel by NEOMG and/or the Plain Dealer, Mr. Vogel has been exposed to public hatred, contempt, ridicule, shame or disgrace that has adversely affected him in his trade and/or profession, and has suffered expenses in an amount not yet fully ascertained.  Mr. Vogel has further sustained a loss of earnings, embarrassment, humiliation, loss of standing in the community and loss of professional reputation, and his ability to enjoy life and his family have been adversely affected, thereby entitling Mr. Vogel to punitive damages in addition to compensatory and consequential damages from NEOMG and/or the Plain Dealer, as well as other costs and fees, including, without limitation, attorney's fees.

## COUNT SEVEN

### (Defamation)

126.    Mr. Vogel restates the allegations in paragraphs 1 through 125 as if fully rewritten herein.

127.    Ms. Morris and Ms. Haley provided false and defamatory verbal and written statements to Mr. Huber, attorney Beck, Mayor Hanwell and others alleging that Mr. Vogel sexually harassed them.

128.    The false and defamatory verbal and written statements provided by Ms. Morris and Ms. Haley caused the termination of Mr. Vogel's employment with the City of Medina on December 16, 2013.

129.    The defamatory statements of Ms. Morris and Ms. Haley were then re-published by the City of Medina and its officials and/or employees to newspaper companies via a public records request without privilege, and then to the general public in print and digital media.

130.    Ms. Morris', Ms. Haley's and the City of Medina's actions of providing false and defamatory verbal and written statements about Mr. Vogel were done intentionally and with actual malice, or with at least negligence.

131.    Ms. Morris', Ms. Haley's and the City of Medina's defamatory statements have caused special harm to Mr. Vogel.

132.    As a direct and proximate result of the defamation of Mr. Vogel by Ms. Morris, Ms. Haley and the City of Medina,  Mr. Vogel has been exposed to public hatred, contempt, ridicule, shame or disgrace that has adversely affected him in his trade and/or profession, and has suffered expenses in an amount not yet fully ascertained.  Mr. Vogel has further sustained a loss of earnings, embarrassment, humiliation, loss of standing in the community and loss of professional reputation, and his ability to enjoy life and his family have been adversely affected, thereby entitling Mr. Vogel to punitive damages from Ms. Morris and Ms. Haley, in addition to compensatory and consequential damages from Ms. Morris, Ms. Haley and the City of Medina, as well as  other costs and fees, including, without limitation,  attorney's fees.

## COUNT EIGHT

### (False Light Invasion of Privacy)

133.    Mr. Vogel restates the allegations in paragraphs 1 through 132 as if fully rewritten herein.

134.    Ms. Morris and Ms. Haley publicized a matter concerning Mr. Vogel when they falsely reported allegations of sexual harassment to Mr. Piccoli, Mr. Huber, Mayor Hanwell and

the City of Medina.

135.     The City of Medina publicized a matter concerning Mr. Vogel when it re-published Ms. Morris' and Ms. Haley's false allegations against Mr. Vogel in communications and delivery of documents to the media, including NEOMG and the Plain Dealer.

136.     NEOMG and/or the Plain Dealer publicized a matter concerning Mr. Vogel when they falsely reported that Mayor Hanwell was going to arrest Mr. Vogel before deciding only to put him on administrative leave and that Mr. Vogel was escorted out of Medina City Hall by police officers in the December 6, 2013 article written by Ms. Miller and published in both print and electronic form through the Cleveland.com website.

137.     The publicity of these false allegations placed Mr. Vogel before his co-workers, superiors, family members and the public at large in a false light.

138.     The false light in which Mr. Vogel was placed would be highly offensive to a reasonable person in Mr. Vogel's position.

139.     Defendants had knowledge of the falsity of said publicized allegations and the false light in which they placed Mr. Vogel or acted with reckless disregard as to the falsity of the publicized allegations and the false light in which they placed Mr. Vogel.

140.     As a direct and proximate result of Defendants' placing Mr. Vogel in a false light, Mr. Vogel is entitled to compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of Defendants' false light invasion of Mr. Vogel's privacy.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Vogel respectfully requests the following relief:

A.      As to Count One, for judgment against Defendants in favor of Mr. Vogel for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of Defendants' violations of Section 1983, as alleged in this Complaint;

B.      As to Count Two, for judgment against the City of Medina, Ms. Morris and Ms. Haley in favor of Mr. Vogel for compensatory damages in an amount to be proved at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of the termination of Mr. Vogel's employment in violation of Title VII of the the Civil Rights Act of 1964 and 42 U.S.C. §2000e, *et seq.*;

C.      As to Count Three, for judgment against the City of Medina, Ms. Morris and Ms. Haley in favor of Mr. Vogel for compensatory damages in an amount to be proved at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of the termination of Mr. Vogel's employment in violation of R.C. §§ 4112.02(A) and 4112.99;

D.      As to Count Four, for judgment against the City of Medina, Ms. Morris and Ms. Haley in favor of Mr. Vogel for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other

damages suffered as a result of said Defendants' creation of a hostile work environment based on gender in violation of R.C. §§ 4112.02(A) and 4112.99;

E.      As to Count Five, for judgment against the City of Medina, Ms. Morris and Ms. Haley in favor of Mr. Vogel for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of said Defendants' intentional infliction of emotional distress upon Mr. Vogel;

F.      As to Count Six, for judgment against NEOMG and the Plain Dealer in favor of Mr. Vogel for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of said Defendants' libel against Mr. Vogel;

G.      As to Count Seven, for judgment against Ms. Morris, Ms. Haley and the City of Medina in favor of Mr. Vogel for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of said Defendants' defamation of Mr. Vogel;

H.      As to Count Eight, for judgment against Defendants in favor of Mr. Vogel for compensatory damages in an amount to be proven at trial before a jury, which is sufficient to fully compensate Mr. Vogel for his physical and emotional distress, humiliation and embarrassment, loss of income and loss of employment benefits, and other damages suffered as a result of Defendants' false light invasion of Mr. Vogel's privacy;

I.      As to all counts, Mr. Vogel's reasonable attorney's fees and court costs;

J.      As to all counts, punitive damages to the extent permitted by applicable federal and/or state law in an amount to be determined at trial sufficient to punish and deter Defendants' unlawful conduct in the future; and

K.      As to all counts, such other legal and/or equitable relief to which Mr. Vogel may be entitled.

Respectfully submitted,

GRUBB & ASSOCIATES, LPA

*/s/ Mark E. Owens*
Natalie F. Grubb (0062596)
Mark E. Owens (0068335)
437 W. Lafayette Road, Suite 260-A
Medina, Ohio 44256
Ph: (330) 725-7252
Fax: (330) 723-1095
E-Mail: officemgr@grubbandassoc.com
*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

*/s/ Mark E. Owens*
Mark E. Owens (0068335)